UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

SAI QIN CHEN, WAI FONG CHEONG,        :
AI QIN GUO, ZENG CAN LU,
XIU RONG TONG, SKY WONG, and          :
XIU HUA XU,
                                      :
                  Plaintiffs,                13 Civ. 3902 (HBP)
                                      :
                                             OPINION
     -against-                        :      AND ORDER

EAST MARKET RESTAURANT, INC.          :
d/b/a EAST MARKET RESTAURANT,
JIMMY CHENG, GUO PING ZHENG,          :
ZHENG JIANG ZHENG, and
ZHENG XIANG ZHENG,                    :

                  Defendants.         :

------------------------------------X

        PITMAN, United States Magistrate Judge:


I.   Introduction

        This matter was tried before me on June 20, 21 and 22,

2016.  This is an action brought under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the New York Labor Law

("NYLL") §§ 191 et seq. in which plaintiffs seek unpaid wages,

liquidated damages, pre- and post-judgment interest, statutory

damages for failure to furnish wage statements and reasonable

attorney's fees.  I expressly incorporate the parties' Stipula-

tions of Fact and Law dated February 16, 2015 ("Stipulations")

into this ruling; those Stipulations are annexed hereto as Appendix A and are made part of this ruling.  I also note that on September 30, 2015, I granted plaintiffs' motion for partial summary judgment, finding that defendants were not entitled to take advantage of the tip credit under the NYLL for the time period prior to January 1, 2011.  See Sai Qin Chen v. E. Mkt. Rest., Inc., 13 Civ. 3902 (HBP), 2015 WL 5730014 at *6 (S.D.N.Y. Sept. 30, 2015).

Based on the testimony and other evidence offered at trial, the Stipulations, the parties' pre-trial submissions and the Joint Pre-Trial Order, dated Feb. 16, 2015 (Docket Item ("D.I.") 80-2) ("Joint Pre-Trial Order")), I make the following findings of fact and conclusions of law.

II.  Findings of Fact

1.  The Complaint in this action was filed on June 7, 2013 by plaintiffs Wai Fong Cheong, Ai Qin Guo, Zeng Can Lu, Xiu Rong Tong, Sky Wong and Xiu Hua Xu (D.I. 1).  In the Amended Complaint that was filed on June 11, 2014, Sai Qin Chen was added as a plaintiff.  In their Amended Complaint, plaintiffs asserted claims arising out of their employment at East Market Restaurant, Inc. ("East Market") from June 7, 2007 through June 11, 2014 (D.I. 32; Joint Pre-Trial Order at 2).

2.   Defendant East Market is a New York corporation that owned and operated a Chinese restaurant doing business under the name East Market Restaurant at 75 Broadway, New York, NY 10002 (Stipulations ¶ 23).

3.   East Market closed in December 2014, and each plaintiff's employment there ended on or before that date (Stipulations ¶¶ 2, 8, 11, 14, 17, 20).

4. Each plaintiff was employed by East Market as either a waiter/waitress, captain or busser and worked six days per week.  Their rates of pay changed over time.  Their rates of pay throughout the periods of their employment were as follows:

| Plaintiff | Hourly rate | Period for which Hourly Rate Was Paid |
|---|---|---|
| Sai Qin Chen | $4.60 | 01/13/2007-08/08/2009 |
| Sai Qin Chen | $4.65 | 08/09/2009-12/11/2010 12/19/2010-12/31/2010 |
| Sai Qin Chen | $5.00 | 01/01/2011-04/09/2011 04/17/2011-03/31/2012 04/08/2012-02/09/2013 02/17/2013-05/07/2014 |
| Sai Qin Chen | $7.25 | 12/12/2010-12/18/2010 04/10/2011-04/16/2011 04/01/2012-04/07/2012 02/10/2013-02/16/2013 |
| Wai Fong Cheong | $4.60 | 01/13/2007-08/08/2009 |

| Wai Fong Cheong | $4.65 | 08/09/2009-12/31/2010 |
|---|---|---|
| Wai Fong Cheong | $5.00 | 01/01/2011-04/02/2011<br>04/10/2011-03/10/2012<br>03/15/2012-03/31/2012<br>04/08/2012-12/2014 |
| Wai Fong Cheong | $7.25 | 04/03/2011-04/09/2011<br>03/11/2012-03/14/2012<br>04/01/2012-04/07/2012 |
| Qi Qin Guo | $4.60 | 01/13/2007-08/08/2009 |
| Qi Qin Guo | $4.65 | 08/09/2009-12/31/2010 |
| Qi Qin Guo | $5.00 | 01/01/2011-07/16/2011<br>07/24/2011-12/2014 |
| Qi Qin Guo | $7.25 | 07/17/2011-07/23/2011 |
| Zeng Can Lu | $4.60 | 01/13/2007-08/08/2009 |
| Zeng Can Lu | $4.65 | 08/09/2009-12/11/2010<br>12/19/2010-12/31/2010 |
| Zeng Can Lu | $5.00 | 01/01/2011-04/02/2011<br>04/10/2011-07/31/2011<br>08/07/2011-10/27/2012<br>11/04/2012-12/2014 |
| Zeng Can Lu | $7.25 | 12/12/2010-12/18/2010<br>04/03/2011-04/09/2011<br>08/01/2011-08/06/2011<br>10/28/2012-11/03/2012 |
| Xiu Rong Tong | $4.60 | 01/13/2007-08/08/2009 |
| Xiu Rong Tong | $4.65 | 08/09/2009-12/31/2010 |
| Xiu Rong Tong | $5.00 | 01/01/2011-04/02/2011<br>04/10/2011-03/10/2012<br>03/15/2012-12/2014 |

| Xiu Rong Tong | $7.25 | 04/03/2011-04/09/2011<br>03/11/2012-03/14/2012 |
|---|---|---|
| Sky Wong | $4.75 | 01/13/2007-08/15/2009 |
| Sky Wong | $4.80 | 08/23/2009-12/11/2010<br>12/19/2010-12/25/2010 |
| Sky Wong | $5.15 | 01/01/2011-10/01/2011<br>10/30/2011-11/26/2013 |
| Sky Wong | $7.25 | 08/16/2009-08/22/2009<br>12/12/2010-12/18/2010<br>10/02/2011-10/29/2011 |
| Xiu Hua Xu | $4.60 | 01/13/2007-08/14/2009 |
| Xiu Hua Xu | $4.65 | 08/15/2009-12/31/2010 |
| Xiu Hua Xu | $5.00 | 01/01/2011-03/31/2012<br>04/08/2012-07/25/2013 |
| Xiu Hua Xu | $7.25 | 04/01/2012-04/07/2012 |

(Stipulations ¶¶ 2-22, 63-77; Plaintiffs' Statement of Elements and Summary of Facts (D.I. 67) & Exhibits ("Pls.' FFCL"); Joint Pre-Trial Order, Exhibits B-H).

     5.   Individual defendants Jimmy Cheng, Guo Ping Zheng, Zheng Jiang Zheng and Zheng Xiang Zheng were each shareholders of East Market during the relevant time periods.  As shareholders, the individual defendants collectively made decisions concerning the hiring and firing of employees at the restaurant, setting some employees' wages and work schedules, the rules and policies for the employees, the general management of the restaurant and

the hiring of an outside accountant to manage the restaurant's finances and compliance with the minimum wage laws.  Each of the individual defendants had an equal vote in making these decisions regardless of their proportion of ownership (Stipulations ¶¶ 28-45; Testimony of Jimmy Cheng, Guo Ping Zheng[1]).

6.   Each of the individual defendants voted in favor of acquiring the restaurant that subsequently became East Market (Stipulations ¶ 27; Testimony of Jimmy Cheng, Guo Ping Zheng).

7.   Each of the individual defendants voted to approve the hiring of each of the plaintiffs, all of whom were former employees of the Ming Dynasty restaurant (Stipulations ¶ 29; Testimony of Jimmy Cheng, Guo Ping Zheng).  Defendant Jimmy Cheng and Guo Ping negotiated the hiring of plaintiffs (Testimony of Jimmy Cheng, Guo Ping Zheng, Sky Wong).

8.   Each of the individual defendants voted in favor of appointing Jimmy Cheng as General Manager of the restaurant from January 9, 2007 through December 2014 (Stipulations ¶¶ 30-32; Testimony of Jimmy Cheng, Guo Ping Zheng).  Defendant Jimmy Cheng was physically present in the restaurant on a daily basis when he was not traveling to China (Stipulations ¶ 33; Testimony of Sky

---

[1]No party has ordered a transcript of the trial.  Accordingly, specific cites to the witnesses' testimony cannot be provided.

Wong).  From January 9, 2007 through April 30, 2008, defendant Jimmy Cheng was a twenty-five percent shareholder in the restaurant; from March 1, 2008 until the restaurant closed in December 2014, Jimmy Cheng was a forty-percent shareholder in the restaurant (Stipulations ¶ 28).

9.  Defendant Guo Ping Zheng was President of the Board of Directors, obtained the liquor license for the restaurant, signed the lease for the restaurant, signed some of the employees' paychecks and was physically present in the restaurant on a daily basis (Stipulations ¶¶ 34-36; Testimony of Guo Ping Zheng, Sky Wong).  From January 9, 2007 through April 30, 2008, defendant Guo Ping Zheng was a five-percent shareholder in the restaurant; from March 1, 2008 until the restaurant closed in December 2014, Guo Ping Zheng was a ten-percent shareholder in the restaurant (Stipulations ¶ 34).

10.  Defendant Zheng Jiang Zheng was responsible for managing the income and expenses of East Market.  Mr. Jiang was generally present in East Market between three and six days per week for approximately five hours each day (Stipulations ¶¶ 38-39).  From January 9, 2007 through April 30, 2008, defendant Zheng Jiang Zheng was a ten-percent shareholder in the restaurant; from March 1, 2008 until the restaurant closed in December

2014, Zheng Jiang Zheng was a fifteen-percent shareholder in the restaurant (Stipulations ¶ 38).

11.   Defendant Zheng Xiang Zheng was in the restaurant between three and five days per week and was in charge of ordering the restaurant's supplies (Stipulations ¶ 41).   Defendant Zheng Xiang Zheng was a twenty-five percent shareholder in the restaurant from March 1, 2008 through December 2014, when the restaurant closed (Stipulations ¶ 41).

12.   The individual defendants, as shareholders, each voted in favor of hiring a manager named Ren Kang Wu, also known as "Ah Hong," "Ah Kang" or "Wu" (hereafter "Ah Hong") who, in turn, would hire and supervise most of the restaurant staff and set the work schedules (Stipulations ¶ 45; Testimony of Jimmy Cheng, Guo Ping Zheng, Sky Wong, Sai Qin Chen).

13.   Each of the individual defendants voted in favor of hiring an accountant in 2007; the individual defendants jointly authorized the accountant to set the wages of the restaurant's employees.   The individual defendants also jointly delegated decisions regarding the restaurant's compliance with the federal and state wage and hour laws to the accountant (Stipulations ¶¶ 58-60; Testimony of Jimmy Cheng, Guo Ping Zheng, Ah Hong).

14.   Plaintiffs considered each of the individual defendants to be their "bosses" because they told plaintiffs "what to do" and attended employee meetings; at these meetings, the "bosses" would discuss their plans to make the restaurant more profitable (Testimony of Sky Wong; Ai Quin Guo; Wai Fong Cheong, Sai Qin Chen).

15. At all times East Market was plaintiffs' employer within the meaning of the FLSA and the Labor Law (Stipulations ¶¶ 1, 2, 5, 8, 11, 14, 17, 20, 24).

16.   Exclusive of their tips, each plaintiff was often paid less than the statutory minimum wage throughout his or her employment.   The parties have stipulated, however, that if defendants are entitled to take the tip credit available under the federal and state labor laws, each plaintiff was lawfully paid (Stipulations ¶¶ 4, 10, 13, 16, 19, 22).

17.   Plaintiffs were paid by check on a weekly basis (Testimony of Sky Wong).

18.   In the summer of 2012 during plaintiffs' employment at the restaurant, Ah Hong provided each plaintiff with the Form LS 54C issued by the New York State Department of Labor. The LS 54C Form provided to plaintiffs included instructions in English and Chinese and, among other things, contained blank spaces for the insertion of the employee's pay rate, the em-

9

ployer's "allowances taken" (including tips) and the overtime pay rate.  There is a section at the end of the form entitled "Employee Acknowledgment" which states that "On this day, I received notice of my pay rate, overtime rate if eligible, allowances and designated payday in English and my primary language.  I told my employer that my primary language is Chinese."  Below this statement, the form includes a space for the employee's name, signature and the date (See, e.g. Plaintiffs' Trial Exhibit T; Testimony of Sky Wong, Ai Quin Guo, Wai Fong Cheong, Sai Qin Chen).

19.  I credit each plaintiff's testimony that the LS 54C forms that Ah Hong provided to plaintiffs in the summer of 2012 did not have any of the blank spaces described above completed (Testimony of Sky Wong, Ai Quin Guo, Wai Fong Cheong, Sai Qin Chen).  I do not credit defendants' testimony that they provided plaintiffs with these forms in 2011 or that the forms were fully filled in before plaintiffs signed the forms.

20.  I credit plaintiffs' testimony that (1) Ah Hong told them that the form was for tax purposes and (2) that, at the manager's direction, each plaintiff signed a blank form but did not date it (Testimony of Sky Wong, Ai Quin Guo, Wai Fong Cheong, Sai Qin Chen).

21.   Sometime after they signed the LS 54C Forms, each of the plaintiffs asked Ah Hong for the forms back.  When Ah Hong later returned the forms to plaintiffs, they had been filled in. The information that was added included a date in 2011, the amount of each plaintiff's hourly wage and the tip credit allowance (Testimony of Sky Wong, Ai Quin Guo, Wai Fong Cheong, Sai Qin Chen).

22. At no time did defendants explain to plaintiffs what the tip credit was or that plaintiffs were being paid less than the minimum wage.  The defendants also failed to furnish plaintiffs with wage statements that set forth this information (Stipulations ¶¶ 57, 81; Testimony of Sky Wong, Ai Quin Guo, Wai Fong Cheong, Sai Qin Chen).

## III.  Conclusions of Law

### A.  Jurisdiction and Venue

23.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

11

B. <u>Employer Status</u>

24. In order to be liable, each individual defendant must be an "employer" within the meaning of the FLSA and the Labor Law. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition is to be construed expansively. <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 139 (2d Cir. 1999).

> NYLL's broad definition of an employer includes "any person . . . employing any individual in any occupation, industry, trade, business or service or any individual . . . acting as employer." <u>Irizarry v. Catsimatidis</u>, 722 F.3d 99, 118 (2d Cir. 2013) (citing NYLL § 190(3)). Courts look to a four-factor "economic reality" test to determine whether this definition has been met -- namely whether the alleged employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records." <u>Lauria v. Heffernan</u>, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009).

<u>Karic v. Major Auto. Cos.</u>, 992 F. Supp. 2d 196, 203 (E.D.N.Y. 2014); <u>see</u> <u>also</u> <u>Carter v. Dutchess Cmty. Coll.</u>, 735 F.2d 8, 12 (2d Cir. 1984).[2] "These factors are not exclusive, and the

---

[2] New York Labor Law § 190 defines an "employer" as broadly as the FLSA does; the test for an "employer" is essentially identical under federal and state law. <u>Zheng v. Liberty Apparel Co.</u>, <u>supra</u>, 355 F.3d at 78; <u>see</u> <u>also</u> <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 342 & n. 25 (S.D.N.Y. 2005) (Sand, D.J.).

plaintiff need not satisfy all of them to demonstrate that a particular defendant is an employer." Kim v. Kum Gang, Inc., 12 Civ. 6344 (MHD), 2015 WL 2222438 at *39 (S.D.N.Y. Mar. 19, 2015) (Dolinger, M.J.), citing Zheng v. Liberty Apparel Co., 355 F.3d 61, 71-72 (2d Cir. 2003). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013).

        25.  Our Court of Appeals has noted with approval a decision by the Sixth Circuit holding that "an individual defendant who . . . 'made major corporate decisions' but 'did not have day-to-day control of specific operations'" was an employer because "the defendant's responsibilities, which included determining employee salaries, constituted 'operational control of significant aspects of the corporation's day to day functions.'" Irizarry v. Catsimatidis, supra, 722 F.3d at 108, quoting Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 966 (6th Cir. 1991) (emphasis in original).

        26.  The Court of Appeals has also cited with approval a First Circuit decision that imposed liability on individual defendants "'who together were President, Treasurer, Secretary and sole members of the Board' of the defendant company'" where one of

> the defendants had been "personally involved in deci-
> sions about layoffs and employee overtime hours" . . .
> and the defendants together had "operational control of
> significant aspects of the corporation's day to day
> functions, including compensation of employees, and [ ]
> personally made decisions to continue operations de-
> spite financial adversity during the period of nonpay-
> ment."

Irizarry v. Catsimatidis, supra, 722 F.3d at 108, quoting Donovan

v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983).

27.   At all times relevant to this action, defendant

East Market and the individual defendants were plaintiffs'

employers.   In addition to exercising equal voting rights to hire

and fire plaintiffs, set their rates of pay and work schedules

and hire a manager and accountant for the restaurant, the indi-

vidual defendants were present at the restaurant, attended

meetings related to plaintiffs' employment and instructed plain-

tiffs on their duties during work hours.   These facts are suffi-

cient to establish that, as a matter of economic reality, each of

the defendants were plaintiffs' employers under the FLSA and the

NYLL.

C.   Wage Claims

28.   Pursuant to the FLSA and NYLL, an employee is

entitled to at least the minimum wage for all hours worked and,

for hours worked in excess of 40 hours per week, premium pay of

one and one-half times the greater of the employee's hourly rate
or the minimum wage.   29 U.S.C. §§ 206(a), 207(a)(1); N.Y. Labor
L. § 652; 12 N.Y.C.R.R. §§ 142-2.1, 142-2.2; Rosendo v.
Everbrighten Inc., 13 Civ. 7256 (JGK)(FM), 2015 WL 1600057 at *3-
*4 (S.D.N.Y. Apr. 7, 2015) (Maas, M.J.) (Report & Recommenda-
tion), adopted at, 2015 WL 4557147 (S.D.N.Y. July 28, 2015)
(Koeltl, D.J.).

  29.   "In order to establish liability under the FLSA, a
plaintiff must prove [among other things] that both the employee
and the employer are covered by the law."  Liang Huo v. Go Sushi
Go 9th Ave., 13 Civ. 6573 (KBF), 2014 WL 1413532 at *2 (S.D.N.Y.
Apr. 10, 2014) (Forrest, D.J.).  The FLSA applies to employees
who are "engaged in commerce or in the production of goods for
commerce" or where their employer is "an enterprise engaged in
commerce or in the production of goods for commerce," meaning,
among other things, that the employer "has employees engaged in
commerce" or the employer "has employees handling, selling, or
otherwise working on goods or materials that have been moved in
or produced for commerce by any person" and the employer's
"annual gross volume of sales made or business done is not less
than $500,000."  29 U.S.C. §§ 203(s)(1), 206(a).  "The require-
ments to make out a claim under the NYLL mirror the FLSA in most
respects; however, the NYLL does not require a plaintiff to show

15

that the employer was involved in interstate commerce or had $500,000 in minimum annual sales." Liang Huo v. Go Sushi Go 9th Ave., supra, 2014 WL 1413532 at *3; see N.Y. Labor L. § 652; 12 N.Y.C.R.R. § 142-2.2.

30.   The statute of limitations is six years under the NYLL and two years under the FLSA.  See N.Y. Labor Law § 198(3); 29 U.S.C. § 255(a).  Although a three-year statute of limitation applies to FLSA claims alleging a willful violation of the law, 29 U.S.C. § 255(a), plaintiffs do not seek damages under the FLSA for a three-year period (Pls.' FFCL at 6).

31.   The parties have stipulated to enterprise coverage under the FLSA (Stipulations ¶ 25).  Plaintiffs and defendants are also covered under the FLSA and NYLL.  See 29 U.S.C. §§ 203(d), (e)(1), 206(a); N.Y. Labor L. § 652; 12 N.Y.C.R.R. § 142-2.2.

32.   The Honorable Katherine Polk Failla, United States District Judge, recently summarized the law applicable to employers who wish to credit a portion of an employee's tips against the minimum wage otherwise required under the FLSA and the NYLL:

> To avail himself of the FLSA's tip credit, an employer must comply with two additional statutory requirements.  "The FLSA provides that the tip credit 'shall not apply with respect to any tipped employee unless [i] such employee has been informed by the employer of the [statute's tip credit] provisions, and [ii] all tips received by such employee have been

retained by the employee.'" Jrpac, 2016 WL 3248493, at
*23 (quoting 29 U.S.C. § 203(m)).   This first
requirement--the "notice provision"--is strictly
construed and normally requires that an employer take
affirmative steps to inform affected employees of the
employer's intent to claim the tip credit." Inclan, 95
F. Supp. 3d at 497 (quoting Perez v. Lorraine Enters.,
Inc., 769 F.3d 23, 27 (1st Cir. 2014)).

     "The employer bears the burden of showing that it
satisfied the notice requirement 'by, for example,
providing employees with a copy of § 203(m) and inform-
ing them that their tips will be used as a credit
against the minimum wage as permitted by law.' " Cucu
v. 861 Rest. Inc., No. 14 Civ. 1235 (JGK), 2017 WL
2389694, at *3 (S.D.N.Y. June 1, 2017) (quoting
Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp.
2d 253, 288 (S.D.N.Y. 2011)).   However, "[t]he FLSA's
notice provision does not require that the notice be
given in writing." Jrpac, 2016 WL 3248493, at *23.
"If the employer cannot show that it has informed
employees that tips are being credited against their
wages, then no tip credit can be taken and the employer
is liable for the full minimum[ ]wage[.]" Inclan, 95
F. Supp. 3d at 497 (citation omitted); see Copantitla,
788 F. Supp. 2d at 288 (restaurant not entitled to take
tip credit despite "informing employees that they would
receive an hourly rate plus tips" and "posting notices
about the minimum wage laws," because restaurant did
not "t[ell] its employees that it intended to use tips
to satisfy its minimum wage obligations").

     NYLL:   "The NYLL allows an employer to take a tip
credit for tipped employees, subject to certain condi-
tions similar to those under the FLSA." Jrpac, 2016 WL
3248493, at *25; see 12 N.Y.C.R.R. § 146-1.3 ("An
employer may take a credit towards the basic minimum
hourly rate if a service employee or food service
worker receives enough tips and if the employee has
been notified of the tip credit[.]").   But there is a
critical distinction between the NYLL's notice provi-
sion and the FLSA's:   "Notice of the tip credit under
the NYLL . . . must be written." Jrpac, 2016 WL
3248493, at *25.   Thus, "[p]rior to the start of em-
ployment, an employer shall give each employee written

> notice of . . . the amount of tip credit, if any, to be
> taken from the basic minimum hourly rate . . . The
> notice shall also state that extra pay is required if
> tips are insufficient to bring the employee up to the
> basic minimum hourly rate." 12 N.Y.C.R.R. §
> 146-2.2(a).  And this notice must be written in both
> English and "any other language spoken by the new
> employee as his/her primary language." Id. §
> 146-2.2(a)(1)-(2).  Moreover, once an employer has
> provided written notice of this tip credit, the em-
> ployer must obtain "[acknowledgment] of receipt signed
> by the employee," and that signed [acknowledgment] must
> "be kept on file for six years." Id. § 146-2.2(c).

Gamero v. Koodo Sushi Corp., 15 Civ. 2697 (KPF), 2017 WL 4326116

at *13 (S.D.N.Y. Sept. 28, 2017) (Failla, D.J.) (last two alter-

ations added), appeal filed, No. 17-3356 (2d Cir. Oct. 19, 2017);

see also Hernandez v. Jrpac Inc., 14 Civ. 4176 (PAE), 2016 WL

3248493 at *23-*25, (S.D.N.Y. June 9, 2016) (Engelmayer, D.J.);

Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 465-66

(S.D.N.Y. 2015) (Torres, D.J.).

        33.  The New York Department of Labor's website states:

"The employer may provide its own notice, as long as it includes

all of the required information, or [the employer may] use the

Department's sample notices.  See our Wage Theft Prevention Act

Forms for pay notices in a variety of languages." See New York

Department of Labor, Notice of Pay Rate, at

https://labor.ny.gov/workerprotection/laborstandards/employer/wag

e-theft-prevention-act.shtm (last visited Dec. 27, 2017).  The

site includes a link to a number of forms, including a blank version of the LS 54C Form provided to plaintiffs here.

34.  In New York, the minimum hourly rate was $7.15 per hour from January 1, 2007 to July 23, 2009, $7.25 from July 24, 2009 to December 30, 2013 and $8.00 per hour from December 31, 2013 to December 30, 2014.  See 29 U.S.C. § 206; N.Y. Labor L. § 652; 12 N.Y.C.R.R. § 142-2.1(a).  Although the minimum wage under the FLSA was $7.25 throughout the period for which plaintiffs seek recovery under that statute, both the FLSA and the Labor Law require employers to pay employees at the higher of the state or federal minimum wage.  See 29 U.S.C. § 218(a); N.Y. Labor Law § 652.

35.  In an FLSA case, "[i]n the absence of rebuttal by defendants, a plaintiff's recollection and estimates of hours worked are presumed to be correct."  Agudelo v. E & D LLC, 12 Civ. 0960 (HB), 2012 WL 6183677 at *2 (S.D.N.Y. Dec. 11, 2012) (Baer, D.J.), citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946).

36. Because defendants' time records do not exist for some plaintiffs and are incomplete for others, I rely on plaintiffs' recollections regarding the hours each worked.

37. Defendants have failed to meet their burden of demonstrating that they were entitled to take advantage of the

19

tip credit after January 1, 2011. The credible evidence shows that defendants did not provide plaintiffs with the LS 54C Form until 2012, and at that time, defendants had plaintiffs sign blank forms, a practice which does not constitute sufficient notice of the credit. Plaintiffs testified that defendants later provided them with forms that were backdated to 2011 and with certain blank spaces filled in. However, the completed forms were not offered in evidence. Moreover, it is undisputed that defendants did not verbally notify plaintiffs of the tip credit (Stipulations ¶ 57); rather, plaintiffs testified that they were told that the LS 54C Form was for "tax purposes." Some of the plaintiffs testified that defendants did not inform them of their hourly rate of pay until sometime after this lawsuit was filed (Testimony of Sky Wong; Ai Quin Guo; Wai Fong Cheong). In the absence of evidence verifying both the information that was provided to plaintiffs in the completed forms and its accuracy, I find that defendants have failed to establish that they provided plaintiffs with verbal or written notice of the tip credit under either the FLSA or the NYLL.

38. Plaintiff Sai Qin Chen is entitled to recover damages under the NYLL from June 11, 2008 through June 11, 2014 and under the FLSA for the period from June 11, 2012 through June 11, 2014. Plaintiffs Wai Fong Cheong, Ai Qin Guo, Zeng Can Lu,

Xiu Rong Tong, Sky Wong and Xiu Hua Xu are entitled to recover damages under the NYLL from June 7, 2007 through June 11, 2014 and under the FLSA from June 7, 2011 through June 11, 2014.[3]

39.   At trial, plaintiffs introduced into evidence summaries of defendants' time records for each plaintiff (Plaintiffs' Trial Exhibits B-H).  Further, defendants have stipulated to the average weekly hours worked and amounts earned per hour by each plaintiff for the time periods for which no records were produced (Stipulation ¶¶ 3, 6, 9, 12, 15, 18, 21, 64-68, 63-79). Plaintiffs have provided a chart summarizing the hours worked, the wages paid and the resulting damages sought for all plaintiffs except for Xiu Hua Xu (Pls.' FFCL, Ex. A, B ("Summary of Damages")).  However, the hourly wages in the Summary of Damages do not always coincide with the Stipulations.  For instance, although the parties stipulated that Sai Qin Chen was, with some exceptions, paid $5.00 per hour from January 1, 2011 through May 7, 2014 (Stipulations ¶ 63), the plaintiffs' damages chart indicates that Chen was paid $5.15 per hour starting in January 2011.  The Summary of Damages is also missing information for plaintiff Sky Wong after January 5, 2013.  Therefore, my damages

_____

[3]Although several plaintiffs continued to work at the restaurant after June 11, 2014, plaintiffs do not seek damages for the period after this date (Joint Pre-Trial Order, § III ¶  (A); Pl. Mem. at 1 n.1; Pls.' FFCL at 6, 11-12 & Ex. A, B).

calculation is based on those portions of the plaintiffs' damages calculation that are supported by the Stipulations, the findings in this Opinion and Order and the summaries of defendants' pay records.

40.  Each plaintiff's damages for unpaid wages is set forth in the chart annexed to this Opinion and Order as Appendix B.

D.  Liquidated Damages

41.  An employer who violates the FLSA is liable not only for unpaid wages and overtime premium pay, but also for "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  FLSA liquidated damages are compensatory rather than punitive in nature.  Irizarry v. Catsimatidis, supra, 722 F.3d at 116.  The defendant bears the burden of proving that liquidated damages are unwarranted by "establishing, by plain and substan- tial evidence, subjective good faith and objective reasonable- ness.  The burden . . . is a difficult one to meet, however, and double damages are the norm, single damages the exception." Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks and citation omitted); accord Gayle v. Harry's Nurses Registry, Inc., 594 F. App'x 714, 718 (2d

Cir. 2014) (summary order); <u>Kim v. Kum Gang, Inc.</u>, <u>supra</u>, 2015 WL 2222438 at *28.

42. Similarly, for violations occurring before April 8, 2011, the NYLL also permits employees to recover as liquidated damages 25% of the total unpaid wages; for violations occurring after April 8, 2011 the NYLL permits recovery of 100% of the total unpaid wages thereafter. N.Y. Labor L. § 663(1); <u>see</u> <u>Alvarez v. 215 N. Ave. Corp.</u>, 13 Civ. 7049 (NSR)(PED), 2015 WL 3855285 at *3 (S.D.N.Y. June 19, 2015) (Román, D.J.). Good faith is also a defense under the NYLL to a claim for liquidated damages. The NYLL's good faith standard is substantially the same as the FLSA's willfulness standard. <u>Inclan v. New York Hosp. Grp.</u>, 12 Civ. 4498 (NRB), 2015 WL 1399599 at *11 (S.D.N.Y. Mar. 26, 2015) (Buchwald, D.J.) (collecting cases).[4] However, unlike FLSA liquidated damages, NYLL liquidated damages are designed to be punitive. <u>Reilly v. NatWest Mkts. Grp. Inc.</u>, 181 F.3d 253, 265 (2d Cir. 1999); <u>accord</u> <u>Nunez v. Francis Deli</u>

---

[4]"Until 2009, liquidated damages were imposed only if the [plaintiff] demonstrated that [defendants'] violation was willful," but "[e]ffective November 24, 2009, New York law incorporated the federal standard and shifted the burden of proof to the [defendants]" to prove a good faith basis for believing that their underpayment of wages complied with the law. <u>Galeana v. Lemongrass on Broadway Corp.</u>, 120 F. Supp. 3d 306, 317-18 (S.D.N.Y. 2014) (Daniels, D.J.). As noted below, plaintiffs only seek liquidated damages after November 29, 2009; further, defendants did not timely assert a good faith defense.

Grocery, 13 Civ. 4894 (ER)(KNF), 2015 WL 1963630 at *4 (S.D.N.Y. Apr. 30, 2015) (Ramos, D.J.).

43.   Each plaintiff seeks an award of FLSA liquidated damages as well as NYLL liquidated damages for the period after November 29, 2009 (Plaintiffs' Pre-Trial Memorandum of Law, dated Apr. 22, 2016 (D.I. 66) ("Pls.' Mem.") at 14; Summary of Damages).

44.   The law is now settled in this Circuit that a plaintiff cannot simultaneously recover liquidated damages under both the FLSA and the NYLL.  Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 61 (2d Cir. 2016) (summary order); Gonzalez v. Masters Health Food Serv. Inc., 14 Civ. 7603 (VEC), 2017 WL 3835960 at *19 (S.D.N.Y. July 27, 2017) (Caproni, D.J.) (collecting cases).

45.   Each plaintiff is entitled to an award of liquidated damages in an amount equal to the amount of actual damages sustained under the FLSA in the two-year period prior to his or her commencement of the action.

46.   Plaintiffs are also entitled to liquidated damages at the NYLL rate of 25% of the unpaid wages from November 29, 2009 through April 8, 2011 and at the NYLL rate of 100% in the period between April 9, 2011 and the date on which he or she became entitled to FLSA damages.  Each plaintiff's entitlement to

liquidated damages is also set forth in the chart annexed to this
Opinion and Order as Appendix B.

E.   Pre-judgment Interest

47. Because both FLSA liquidated damages and pre-
judgment interest are compensatory, the award of both would be
duplicative.  Galeana v. Lemongrass on Broadway Corp., supra,
2014 WL 1364493 at *11.  Thus, "[i]t is well settled that in an
action for violations of the Fair Labor Standards Act prejudgment
interest may not be awarded in addition to liquidated damages."
Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988),
citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 714-16 (1945);
accord Nunez v. Francis Deli Grocery, supra, 2015 WL 1963630 at
*6.  However, as discussed above, NYLL liquidated damages are
punitive, and, therefore, even where NYLL liquidated damages are
awarded, pre-judgment interest may be awarded pursuant to New
York C.P.L.R. Section 5001.  Tackie v. Keff Enters. LLC, 14 Civ.
2074 (JPO), 2014 WL 4626229 at *5 (S.D.N.Y. Sept. 16, 2014)
(Oetken, D.J.); see Reilly v. NatWest Mkts. Grp. Inc., supra, 181
F.3d at 265; Galeana v. Lemongrass on Broadway Corp., supra, 2014
WL 1364493 at *11.

48. Plaintiffs seek the award of pre-judgment interest at an annual rate of 9% of their unpaid wages under the NYLL for the period of time not covered by the FLSA (Pls.' Mem. at 15-16).

49. Each plaintiff may recover prejudgment interest on their NYLL claims prior to the first date for which they are entitled to recover FLSA liquidated damages.  For Sai Qin Chen, this date is the period prior to June 11, 2012 and for all of the other plaintiffs it is the period prior to June 7, 2011.

50. New York's statutory interest rate is 9% per year. N.Y. C.P.L.R. § 5004; Alvarez v. N. Ave. Corp., supra, 2015 WL 3855285 at *3.  Where, as here, plaintiffs' "damages were incurred at various times," prejudgment interest is calculated "from a 'single reasonable intermediate date' between the dates on which the plaintiff[s] started and stopped incurring damages" Tackie v. Keff Enters. LLC, 14 Civ. 2074 (JPO), 2014 WL 4626229 at *6 (S.D.N.Y. Sept. 16, 2014) (Oetken, D.J.), quoting N.Y. C.P.L.R. § 5001(b).  Courts applying the NYLL in wage-and-hour cases "often choose the midpoint of the plaintiff's employment within the limitations period." Tackie v. Keff Enters. LLC, supra, 2014 WL 4626229 at *6 (collecting cases).

51. I calculate the amount of prejudgment interest owed to each plaintiff as follows:  First, for Sai Qin Chen, I calculate the amount of wages owed for the period predating June

11, 2012 and for each other plaintiff, I calculate the amount of damages each is owed for the period predating June 7, 2011 (the "NYLL Damages").  Second, I determine the midpoint of the time period beginning with the earliest date on which each plaintiff is entitled to recover NYLL Damages and ending on the date each plaintiff is entitled to FLSA liquidated damages (the "Midpoint Date").  Third, I calculate the interest due on the NYLL Damages from the Midpoint Date through December 31, 2017.

52.  The award of prejudgment interest to each plaintiff is set forth in the damages summary annexed to this Opinion and Order as Appendix B.

F.  NYLL Statutory Damages for
Failure to Furnish Proper Wage Statements

53.  Each plaintiff also seeks an award of $2,500 in statutory damages because they were not provided with wage statements as required by the NYLL (Stipulations ¶ 81; Pls. Mem. at 16).

54.  New York's Wage Theft Prevention Act ("WTPA") "obligates an employer to furnish each employee with a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details."  Yuquilema v. Manhattan's Hero Corp., 13 Civ. 461 (WHP)(JLC), 2014 WL 4207106 at *10

27

(S.D.N.Y. Aug. 26, 2014) (Cott, M.J.) (Report & Recommendation) (internal quotation marks and citation omitted), adopted at, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) (Pauley, D.J.); see N.Y. Labor L. § 195(3).  For the period between April 9, 2011 and February 27, 2015, the WTPA permitted employees to recover "damages of [$100] for each week that the violations occurred . . . but not to exceed a total of $2,500."  N.Y. Labor L. § 198(1-d) (McKinney 2011); 2010 N.Y. Sess. Laws ch. 564 (McKinney).

55.  Because defendants failed to furnish plaintiffs with the required wage statements after April 9, 2011, each plaintiff will be awarded statutory damages in the amount of $2,500.

G.  Post-Judgment Interest

56.  Plaintiffs seek an award of post-judgment interest pursuant to federal law (Pls.' Mem. at 17).

57.  An award of post-judgment interest is mandatory in civil cases.  28 U.S.C. § 1961(a); Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008); accord Pinovi v. FDD Enters., Inc., 13 Civ. 2800 (GBD)(KNF), 2015 WL 4126872 at *7 (S.D.N.Y. July 8, 2015) (Daniels, D.J.).  The award is governed by the federal interest rate as defined in 28 U.S.C. § 1961.  Bazignan v. Team

Castle Hill Corp., 13 Civ. 8382 (PAC), 2015 WL 1000034 at *6 (S.D.N.Y. Mar. 5, 2015) (Crotty, D.J.).

     58.   Accordingly, plaintiffs will be awarded post-judgment interest at the rate authorized by 28 U.S.C. § 1961(a).

IV.   Conclusion

     For all the foregoing reasons, damages are assessed in favor of each plaintiff against defendants, jointly and severally in the amounts set forth in the table annexed to this Opinion and Order as Appendix B, plus pre-judgment interest accruing after December 31, 2017 through the date of judgment and post-judgment interest thereafter.

     Plaintiffs' counsel are to submit their fee application, supported by contemporaneous time records, within 14 days of the date of this Order or advise that they are not seeking their fees.

Dated:   New York, New York
        January 9, 2018

                        SO ORDERED,

                        HENRY PITMAN
                        United States Magistrate Judge

Copies transmitted to:

All Counsel

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

## STIPULATIONS OF FACT AND LAW

1.      During the time period relevant to plaintiffs' claims, the plaintiffs were current and former employees of East Market Restaurant, Inc. d/b/a East Market Restaurant ("East Market" or "the Restaurant").

2.      Plaintiff Sai Qin Chen ("Chen") was employed by East Market as a waitress from January 13, 2007 to May 7, 2014. Ms. Chen worked six days per week. The Restaurant paid Ms. Chen her wages weekly by check.

3.      The Restaurant paid Ms. Chen a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, at which point her pay was increased to $4.65 per hour. Ms. Chen received $4.65 per hour through the remainder of 2009 and through all of 2010, except for the pay period ending December 18, 2010 in which Ms. Chen received $7.25 per hour. On January 1, 2011, the Restaurant increased Ms. Chen's hourly rate of pay to $5.00. Throughout 2011, 2012, and 2013, the Restaurant paid Ms. Chen wages of $5.00 per hour, except for the pay periods ending April 16, 2011, April 7, 2012, and February 16, 2013 for which Ms. Chen received $7.25 per hour.

4.      If Defendants are entitled to take the tip credit, these aforementioned wages would reflect lawful wages for which applicable credits were taken.

5.      Plaintiff Wai Fong Cheong ("Cheong") was employed by East Market as a waitress from January 13, 2007 until the Restaurant permanently closed in December, 2014. Ms. Cheong worked six days per week. The Restaurant paid Ms. Cheong her wages weekly by check.

1

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

6.    The Restaurant paid Ms. Cheong a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, at which point her pay was increased to $4.65 per hour. Ms. Cheong received $4.65 per hour through the remainder of 2009 and through all of 2010. On January 1, 2011, the Restaurant increased Ms. Cheong's hourly rate of pay to $5.00. Throughout 2011, 2012, and 2013, the Restaurant paid Ms. Cheong a wage of $5.00 per hour, except for the pay periods ending April 9, 2011, March 14, 2012, and April 7, 2012 for which Ms. Cheong received $7.25 per hour.

7.    If Defendants are entitled to take the tip credit, the aforementioned wages would reflect lawful wages for which applicable credits were taken.

8.    Plaintiff Ai Qin Guo ("Guo") was employed by East Market as a busser from January 13, 2007 until the Restaurant permanently closed in December, 2014. Ms. Guo worked six days per week. The Restaurant paid Ms. Guo her wages weekly by check.

9.    The Restaurant paid Ms. Guo a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, at which point her pay was increased to $4.65 per hour. Ms. Guo received wages of $4.65 per hour through the remainder of 2009 and through all of 2010. On January 1, 2011, the Restaurant increased Ms. Guo's hourly rate of pay to $5.00. Throughout 2011, 2012, and 2013, the Restaurant paid Ms. Guo wages of $5.00 per hour, except for the pay period ending July 23, 2011 for which Ms. Guo received $7.25 per hour.

10.    If Defendants are entitled to take the tip credit, the aforementioned wages would reflect lawful wages for which applicable credits were taken.

11.    Plaintiff Zeng Can Lu ("Lu") was employed by East Market as a waiter from January 13, 2007 until the Restaurant permanently closed in December, 2014. Mr. Lu worked six days per week. The Restaurant paid Mr. Lu his wages weekly by check.

2

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

12.    The Restaurant paid Mr. Lu wages of $4.60 per hour from January 13, 2007 until August 15, 2009, at which point his pay was increased to $4.65 per hour. Mr. Lu received $4.65 per hour through the remainder of 2009 and through all of 2010, except for the pay period ending December 18, 2010 for which Mr. Lu received $7.25 per hour. On January 1, 2011, the Restaurant increased Mr. Lu's hourly rate of pay to $5.00. Throughout all of 2011, 2012, and 2013, the Restaurant paid Mr. Lu $5.00 per hour, except during the pay periods ending April 9, 2011, August 6, 2011, and November 3, 2012 for which Mr. Lu received $7.25 per hour.

13.    If Defendants are eligible to take the tip credit, the aforementioned wages would reflect lawful wages for which applicable credits were taken.

14.    Plaintiff Xiu Rong Tong ("Tong") was employed by East Market as a busser from January 13, 2007 until the Restaurant permanently closed in December, 2014. Ms. Tong worked six days per week. The Restaurant paid Ms. Tong her wages weekly by check.

15.    The Restaurant paid Ms. Tong wages of $4.60 per hour from January 13, 2007 until August 15, 2009, at which point her pay was increased to $4.65 per hour. Ms. Tong received $4.65 per hour through the remainder of 2009 and through all of 2010. On January 1, 2011, the Restaurant increased Ms. Tong's hourly rate of pay to $5.00. Throughout 2011, 2012, and 2013, the Restaurant paid Ms. Tong wages of $5.00 per hour, except for the pay periods ending April 9, 2011 and March 14, 2012 for which Ms. Tong received $7.25 per hour.

16.    If Defendants are eligible to take the tip credit, the aforementioned wages would reflect lawful wages for which applicable credits were taken.

17.    Plaintiff Sky Wong was employed as a captain by East Market from January 13, 2007 to September 9, 2009 and again from March 6, 2010 to November 26, 2013. Mr. Wong worked six days per week. The Restaurant paid Mr. Wong his wages weekly by check.

3

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

18.     The Restaurant paid Mr. Wong wages of $4.75 per hour from January 13, 2007 until August 29, 2009, at which point his pay was increased to $4.80 per hour. Mr. Wong received $4.80 per hour through the remainder of 2009 and through all of 2010, except for the pay period ending December 18, 2010 for which Mr. Wong received $7.25 per hour. On January 1, 2011, the Restaurant increased Mr. Wong's hourly rate of pay to $5.15. Mr. Wong received $5.15 until his employment was terminated on or about November 26, 2013.

19.     If Defendants are eligible to take the tip credit, the aforementioned wages would reflect lawful wages for which applicable credits were taken.

20.     Plaintiff Xiu Hua Xu was employed as a busser by East Market from January 13, 2007 to July 25, 2013. Ms. Xu worked six days per week. The Restaurant paid Ms. Xu her wages weekly by check.

21.     The Restaurant paid Ms. Xu wages of $4.60 per hour from January 13, 2007 until August 15, 2009, at which point her pay was increased to $4.65 per hour. Ms. Xu received $4.65 per hour through the remainder of 2009 and through all of 2010. On January 1, 2011, the Restaurant increased Ms. Xu's hourly rate of pay to $5.00. Throughout all of 2011, 2012, and 2013, the Restaurant paid Ms. Xu wages of $5.00 per hour, except during the pay period ending April 7, 2012 for which Ms. Xu was paid $7.25 per hour.

22.     If Defendants are eligible to take the tip credit, the aforementioned wages would reflect lawful wages for which applicable credits were taken.

23.     At all times relevant to the plaintiffs; claims, Defendant East Market Restaurant, Inc. was organized as a corporation and existed under the laws of the State of New York. At all times relevant to the plaintiffs' claims, East Market owned and operated a restaurant doing business under the trade name East Market Restaurant, located at 75 East Broadway, New York,

4

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

New York, 10002. East Market was engaged in the sale of Chinese food for consumption on the premises and take-out.

24.     At all times relevant to the plaintiffs' claims, East Market Restaurant, Inc. was the plaintiffs' "employer" within the meaning of Sections 2(6), 190(3), and 651(6) of the New York Labor Law ("N.Y. Lab. Law") and of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

25.     At all times relevant to the plaintiffs' claims, East Market Restaurant, Inc. was an enterprise engaged in interstate commerce within the meaning of the FLSA in that it (i) had employees engaged in commerce or in the production of goods for commerce, or who handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) had an annual gross volume of sales of not less than $500,000.

26.     East Market Restaurant, Inc. began operating its restaurant business at 75 East Broadway, New York, New York, 10002 on or about January 9, 2007.

27.     The space occupied by East Market Restaurant had been previously occupied by another restaurant, Ming Dynasty Restaurant.

28.     Defendant Jimmy Cheng is also known as Shih Kan Cheng. Mr. Cheng has been a shareholder of East Market since January 9, 2007. Prior to March 1, 2008, Mr. Cheng was a twenty-percent shareholder. From March 1, 2008 until the Restaurant was permanently closed in December, 2014, Mr. Cheng owned forty-percent of the shares of East Market Restaurant, Inc.

29.     Prior to opening East Market Restaurant on or about January 9, 2007, Defendant Jimmy Cheng met with a representative of Local 318 Independent Restaurant Workers' Union and Plaintiff Sky Wong and agreed to hire all of the staff who had previously worked at Ming Dynasty. This group included each of the Plaintiffs.

5

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

30.   Throughout the period from January 9, 2007 until the Restaurant closed in December, 2014, Jimmy Cheng was the General Manager of the Restaurant.

31.   The shareholders collectively agreed that Mr. Cheng would be the General Manager.

32.   Throughout the period from January 9, 2007 until the Restaurant closed in December, 2014, in his capacity as General Manager, Mr. Cheng was responsible for aspects of the day to day operation of the restaurant business.

33.   Throughout the period from January 9, 2007 until the Restaurant closed in December, 2014, Jimmy Cheng was generally present at the Restaurant at least once a week performing his functions as a shareholder and General Manager of East Market.

34.   Defendant Guo Ping Zheng has been a shareholder and the president of East Market Restaurant, Inc. since January 9, 2007. Prior to March 1, 2008, Mr. Zheng was a five-percent shareholder. From March 1, 2008 until the Restaurant permanently closed in December, 2014, Mr. Zheng held a ten-percent ownership interest in East Market.

35.   From January 9, 2007 until February 29, 2008, Guo Ping Zheng was responsible for appointing a financial officer to manage the income and expenses of East Market's business, and was jointly responsible for appointing a General Manager to manage the day to day operation of the Restaurant and for approving the hiring and firing of all key personnel of the Restaurant, including all accountants, legal counsel and managers.

36.   Throughout the period from January 9, 2007 until the Restaurant closed in December, 2014, Guo Ping Zheng was generally present in the Restaurant at least two days per week performing his functions as a shareholder and president of East Market.

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

37.     Throughout the period from January 9, 2007 until the Restaurant closed in December, 2014, Mr. G. P. Zheng was paid approximately $10 per hour by East Market for the work he performed, not including any profits he may have received as a shareholder of the business. His hourly wage was determined by East Market's shareholders, a group that included himself.

38.     Defendant Zheng Jiang Zheng has been a shareholder of East Market Restaurant, Inc. since January 9, 2007. Prior to March, 1, 2008, Mr. Z. J. Zheng was a ten-percent shareholder. From March 1, 2008 until the Restaurant permanently closed in December, 2014, Mr. Z. J. Zheng was a fifteen-percent shareholder of the business.

39.     Mr. Z. J. Zheng was responsible for managing the income and expenses of East Market. Throughout the period from January 9, 2007 until the Restaurant closed in December, 2014, Mr. Z. J. Zheng was generally present in the Restaurant between three and six days per week for approximately five hours each day performing his functions as a shareholder of East Market.

40.     Mr. Z. J. Zheng was paid $10 per hour for performing his duties, excluding any profits he may have received as a shareholder. His hourly wage was determined by East Market's shareholders, a group that included himself.

41.     Defendant Zheng Xiang Zheng has been a twenty-five percent shareholder of East Market Restaurant, Inc. from March 1, 2008 until at least December, 2014 when the Restaurant permanently closed. From that time onwards, Mr. Zheng also worked at the Restaurant as the person in charge of ordering supplies.

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

42.     From approximately March 1, 2008 onwards, Mr. Z. X. Zheng was generally present in the Restaurant between three to five days per week functioning in his capacity as a shareholder and the person in charge of ordering supplies.

43.     Mr. Zheng was paid $10 per hour for performing his duties, excluding any profits he may have received as a shareholder of the business. His hourly wage was determined by East Market's shareholders, a group that included himself.

44.     Since March 1, 2008 until at least December, 2014, when the Restaurant permanently closed, it was customary for the shareholders to make corporate decisions together, including those related to:

  (a) the hiring and firing of personnel;

  (b) setting some employees' wages, including the decision to pay captains a higher hourly wage than waiters and bussers;

  (c) determining the rules and policies for the Restaurant's staff, including rules regulating the amount of time waitstaff were permitted to chat with each other;

  (d) general management of the Restaurant; and

  (e) compliance with the minimum wage laws, including the delegation of duties to an accountant.

45.     The individual defendants in their capacity as shareholders also caused the Restaurant to hire a manager named Ren Kang Wu, known variably as "Ah Hong", "Ah Kang", and "Wu," to directly supervise most of the Restaurant staff, including the plaintiffs. "Ah Hong" was responsible for setting the plaintiffs' work schedules. "Ah Hong" was also responsible for hiring most Restaurant staff. "Ah Hong" was directly supervised by the

8

shareholders. "Ah Hong" did not have the authority to fire Restaurant staff or to set other employees' wages, including the Plaintiffs' wages.

46.     The individual defendants participated in the decision to hang at least one poster regarding the labor law in the Restaurant.

47.     In response to the plaintiffs' request that the defendants produce documents sufficient to show what, if any, posters, signs or other material discussing the requirements of federal or state wage and hour laws were provided to East Market's employees or displayed at East Market, defendants produced one poster, bearing Bates stamp D0730, Plaintiffs' Exhibit A.

48.     With regard to the one labor law poster that was hung in the Restaurant, the Defendants do not know when the poster was hung.

49.     The Defendants do not know whether any labor law posters other than the poster produced by Defendants bearing Bates stamp D0730 were hung in the Restaurant, or the content of any such posters.

50.     During discovery in this proceeding, the Defendants produced completed LS 54C Forms issued by the New York State Department of Labor for the plaintiffs. The completed Forms include both English and Chinese.

51.     Each completed LS 54C Form produced by Defendants includes the Plaintiffs' printed and signed names. The printed and signed names were written by the Plaintiffs themselves.

52.     The LS 54C Forms produced by Defendants for Plaintiffs Sai Qin Chen, Wai Fong, Cheong, Ai Qin Guo, Zeng Can Lu, Xiu Rong Tong, and Xiu Hu Xu are all dated June 14, 2011. No date appears on the form for Plaintiff Sky Wong produced by Defendants. The dates on the LS 54C Forms produced by Defendants were not written by the Plaintiffs.

9

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

53.     The LS 54C Forms produced by Defendants also include other information regarding the employer, tip credits, other allowances, and wage rates. These sections were completed by an agent of the Defendants.

54.     During discovery in this proceeding, the Defendants produced cover sheets that were attached to the LS 54C Forms of all Plaintiffs produced by Defendants.

55.     The cover sheets produced by Defendants to the LS 54C Forms produced by Defendants have handwritten sections completed by the Plaintiffs listing out the Plaintiffs' names, social security numbers, positions, and start dates. The cover sheets also have an area for the Plaintiffs to sign their signatures. Except for Sky Wong, each Plaintiff signed his or her cover sheet.

56.     The cover sheets produced by Defendants to the LS 54C Forms produced by Defendants also have several check boxes, check marks and writing concerning each of the Plaintiffs' hourly rate. These sections were completed by an agent of the Defendants.

57.     Other than providing LS 54C Forms to the Plaintiffs, the Defendants had no knowledge of any other actions taken by the Restaurant to notify the Plaintiffs about the Restaurant's intention to take a "tip credit" or to explain that it would be paying the Plaintiffs less than the state minimum wage.

58.     In their capacity as shareholders of East Market Restaurant, Inc., the individual Defendants jointly authorized an accountant to set the wages of the Restaurant's employees in compliance with the labor laws.

59.     The shareholders met with the accountant for the purpose of discussing compliance with state and federal minimum wage laws only one time, and that meeting occurred in or around January, 2007.

10

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

60.    The shareholders jointly delegated all decisions regarding East Market's compliance with the labor laws to the accountant.

61.    During this proceeding, the Plaintiffs requested the Defendants to produce all documents concerning Plaintiffs' employment, including but not limited to, documents concerning the hours worked by Plaintiffs and Plaintiffs' compensation, all paystubs provided, and documents sufficient to show any actual tips or gratuities earned by the Plaintiffs.

62.    In response, the defendants produced only some timecards and paystubs for Sai Qin Chen, Wai Fong Cheong, Ai Qin Guo, Zeng Can Lu, Xiu Rong Tong and Sky Wong; timecards and paystubs for some periods were missing. For some of the periods for which timecards and paystubs are missing, the Restaurant was closed. For some of the periods for which timecards and paystubs are missing, the applicable Plaintiff was on vacation.

63.    For the periods where Defendants did not produce pay stubs or time cards for Sai Qin Chen, it is stipulated that Ms. Chen earned, a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, $4.65 per hour from August 16, 2009 until December 31, 2010, and $5.00 per hour until her employment was terminated on May 7, 2014. If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

64.    It is further stipulated that for those periods, Ms. Chen worked approximately 32.5 hours per week, reflecting the average number of weekly hours worked by Ms. Xu during the period of time for which Defendants did produce records.

65.    For the periods where Defendants did not produce pay stubs or time cards for Wai Fong Cheong, it is stipulated that Ms. Cheong earned, a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, $4.65 per hour from August 16, 2009 until December 31, 2010, and

11

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

$5.00 per hour until the Restaurant permanently closed in December, 2014.  If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

66.    It is further stipulated that for those periods, Ms. Cheong worked approximately 33.4 hours per week, reflecting the average number of weekly hours worked by Ms. Xu during the period of time for which Defendants did produce records.

67.    For the periods where Defendants did not produce pay stubs or time cards for Ai Qin Guo, it is stipulated that Ms. Guo earned a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, $4.65 per hour from August 16, 2009 until December 31, 2010, and $5.00 per hour until the Restaurant permanently closed in December, 2014.  If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

68.    It is further stipulated that for those periods, Ms. Guo worked approximately 33.8 hours per week, reflecting the average number of weekly hours worked by Ms. Xu during the period of time for which Defendants did produce records.

69.    For the periods where Defendants did not produce pay stubs or time cards for Zeng Can Lu, it is stipulated that Mr. Lu earned a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, $4.65 per hour from August 16, 2009 until December 31, 2010, and $5.00 per hour until the Restaurant permanently closed in December, 2014.  If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

12

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

70.   It is further stipulated that for those periods, Mr. Lu worked approximately 32.8 hours per week, reflecting the average number of weekly hours worked by Ms. Xu during the period of time for which Defendants did produce records.

71.   For the periods where Defendants did not produce pay stubs or time cards for Xiu Rong Tong, it is stipulated that Ms. Tong earned a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, $4.65 per hour from August 16, 2009 until December 31, 2010, and $5.00 per hour until the Restaurant permanently closed in December, 2014.  If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

72.   It is further stipulated that for those periods, Ms. Tong worked approximately 34.8 hours per week, reflecting the average number of weekly hours worked by Ms. Xu during the period of time for which Defendants did produce records.

73.   For the periods where Defendants did not produce pay stubs or time cards for Sky Wong, it is stipulated that Mr. Wong earned a wage of $4.75 per hour from January 13, 2007 until August 29, 2009, $4.80 per hour from August 30, 2009 until December 31, 2010, and $5.15 from January 1, 2011 until November 26, 2013. If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

74.   It is further stipulated that for those periods, Mr. Wong worked approximately 31.9 hours per week, reflecting the average number of weekly hours worked by Mr. Wong during the period of time for which Defendants did produce records.

75.   For the periods where Defendants did not produce pay stubs or time cards for Xiu Hua Xu, it is stipulated that Ms. Xu earned a wage of $4.60 per hour from January 13, 2007 until August 15, 2009, $4.65 per hour from August 16, 2009 until December 31, 2010, and $5.00 per

13

*Chen et al. v. East Market Restaurant, Inc., et al.*, No. 13-CV-3902 (HBP)
APPENDIX A

hour until July 25, 2013. If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

76.     It is further stipulated that for those periods, Ms. Xu worked approximately 33.7 hours per week, reflecting the average number of weekly hours worked by Ms. Xu during the period of time for which Defendants did produce records.

77.     Plaintiffs' Exhibits B through H accurately summarize the records bearing Bates stamps D0735-D2592 and D2625-D2861 produced by the Defendants and may be submitted pursuant to Rule 1006 of the Federal Rules of Evidence in lieu of the original documents.

78.     The paystubs produced by the Defendants bearing Bates stamps D1686-D1850 and D2625-2634 do not accurately show the hourly rate paid to Plaintiffs during the year 2007. Instead, plaintiffs Sai Qin Chen, Wai Fong Cheong, Ai Qin Guo, Zeng Can Lu and Xiu Rong Tong were paid $4.60 per hour during that year. Plaintiff Sky Wong was paid $4.75 per hour throughout 2007. If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

79.     The records produced by the Defendants bearing Bates stamps D0040-D1684, D1852-D2592, and D2635-D2861 do accurately show the hourly rate paid to and hours worked by Plaintiffs. If Defendants are entitled to take the tip credit, these aforementioned wages woud reflect lawful wages for which applicable credits were taken.

80.     Payment according to a piece rate is a method of compensation that is customary to apparel factories and not to restaurant workers

81.     The paystubs produced by the Defendants are in English only. They do not indicate on them the hourly minimum wage rate nor do they indicate an amount taken as a "tip credit" towards the minimum wage.

14

## APPENDIX B

| Plaintiff | Unpaid Wages ($) | NYLL Liquidated Damages ($) | FLSA Liquidated Damages ($) | Prejudgment Interest through Dec. 31, 2017 ($) | Wage Statement violations ($) | Total Damages Awarded ($) | Daily Prejudgment Interest after Dec. 31, 2017 ($) |
|---|---|---|---|---|---|---|---|
| Sai Qin Chen | 23,688.66 | 5,910.33 | 7,279.94 | 8,727.80 | 2,500 | 48,106.73 | 3.99 |
| Wai Fong Cheong | 29,047.84 | 2,132.73 | 11,971.23 | 10,865.85 | 2,500 | 56,517.65 | 4.15 |
| Ai Qin Guo | 29,058.03 | 2,189.17 | 12,105.14 | 10,787.12 | 2,500 | 56,639.46 | 4.12 |
| Zeng Can Lu | 28,208.74 | 1,913.08 | 11,797.66 | 10,442.37 | 2,500 | 54,861.85 | 3.99 |
| Xiu Rong Tong | 29,971.18 | 2,182.07 | 12,194.74 | 11,311.15 | 2,500 | 58,159.14 | 4.32 |
| Sky Wong | 21,454.07 | 1,636.71 | 8,086.89 | 8,830.36 | 2,500 | 42,508.03 | 3.25 |
| Xiu Hua Xu | 25,943.45 | 2,117.62 | 8,173.43 | 9,819.71 | 2,500 | 48,554.21 | 4.32 |
| | | | | | Total: | 365,347.07 | 28.14 |